# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. CR04-4105-LTS |
| vs. | |
| KAREEM DAMOE LEE, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

This case is before me on defendant Kareem Lee's pro se motion (Doc. No. 163) and amended motion (Doc. No. 174) pursuant to the First Step Act (FSA). The Government resists (Doc. No. 175). Also before is a pro se motion filed by Lee (Doc. No. 165) pursuant to the Second Chance Act.

## I. BACKGROUND

The FSA became law on December 21, 2018, and, relevant to this case, made the Fair Sentencing Act of 2010 retroactive. Section 404 of the FSA provides that a court may, "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." § 404(b); *see also* 18 U.S.C. § 3582(c)(1)(B). The FSA defines a "covered offense" as any crime which had its penalties modified by § 2 or § 3 of the Fair Sentencing Act of 2010. § 404(a). Section 2 of the Fair Sentencing Act modified the statutory penalties for certain violations of 21 U.S.C. § 841(b) related to cocaine, effectively reducing the penalty applicable to a qualifying defendant. *See also United States v. McDonald*, 944 F.3d 769, 771 (8th Cir. 2019).

On January 31, 2019, Lee filed a pro se motion (Doc. No. 163) pursuant to the FSA. Doc. No. 163. On November 7, 2019, he filed a motion (Doc. No. 164) to appoint

counsel. On February 11, 2020, I entered an order (Doc. No. 166) granting that motion and appointing the federal public defender to represent Lee.[1] I directed appointed counsel to review Lee's potential eligibility for relief pursuant to the FSA and file an amended motion if appropriate. On April 6, 2020, Lee filed an amended motion (Doc. No. 174) to reduce sentence pursuant to the FSA. On April 27, 2020, the Government filed a response indicating that it does not believe Lee is eligible for a sentence reduction and, in the alternative, that I should exercise my discretion to deny relief. Doc. No. 175. On May 18, 2020, Lee filed a reply (Doc. No. 176). On June 12, 2020, based on newly-issued circuit precedent, the Government filed a supplement (Doc. No. 177) withdrawing its argument that Lee is ineligible for relief.

## II. ORIGINAL SENTENCE

On March 16, 2005, Lee was charged in a superseding indictment with one count of conspiracy to distribute crack cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(B) and 846. Doc. No. 46. On April 22, 2008, he pleaded guilty to Count 1s of the superseding indictment. Doc. Nos. 81, 83. The presentence investigation report (PSIR) calculated that Lee was responsible for 9,000 grams of cocaine powder, 6,633.9 grams of cocaine base (crack) and 110.1 grams marijuana, for a total converted drug weight of 134,478.1 kilograms. Doc. No. 125 at 8-9. Based on that quantity and a two-level increase for the possession of a dangerous weapon, Lee had a total offense level of 40. *Id*. at 27. When combined with his criminal history category of III, Lee's USSG guideline range was 360 months to life in prison. *Id*. Further, he was subject to a statutory imprisonment range of 10 years to life, with a term of supervised release of five years to life to follow. *Id*. at 20.

---

[1] I was not Lee's sentencing judge. *See* Doc. No. 119. However, this case was reassigned to me on July 9, 2019.

Lee was sentenced to 360 months in prison with five years of supervised release to follow – the bottom of the guideline range. Doc. No. 119. Subsequently, the court reduced Lee's sentence pursuant to retroactive USSG amendments in both 2011 and 2015. Doc. Nos. 153, 156. Under Amendment 782 (All Drugs Minus Two), Lee's amended USSG finding was a total offense level 36 with a criminal category of III, for an amended guideline range of 235 months to 293 months in prison. The court reduced Lee's sentence to 235 months, the bottom of the amended guideline range. Doc. No. 156.

According to Lee, at the time he filed his amended motion in April 2020, he had actually served approximately 15 years of his 19.5-year sentence and, because of accrued good time credits, has served the equivalent of 17.5 years of that sentence. *See* Doc. No. 174-1 at 27.

### III. FSA APPLICABILITY

As noted above, the FSA allows a court to reduce a defendant's sentence for a "covered offense" as if the Fair Sentencing Act had been in effect at the time of the original offense. A covered offense is an offense whose penalties were altered by § 2 or § 3 of the Fair Sentencing Act of 2010.

Lee is eligible for relief because he was convicted of a crack cocaine offense before 2010. Specifically, conspiracy to distribute crack cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(B) and 846. Section 2 of the Fair Sentencing Act increased the quantity of cocaine base, commonly called crack cocaine, necessary to trigger mandatory minimum sentences under 21 U.S.C. §§ 841(b)(1)(A) and 841(b)(1)(B). Lee argues his statutory sentencing range would be lower under the Fair Sentencing Act. The Government initially argued that the quantity found at sentencing controlled, meaning Lee's sentencing range would not change. I previously rejected that argument in another case. *See United States v. Ingram*, CR07-4056-LTS, Doc. No. 303 (Sept. 10, 2019). The Eighth Circuit Court of Appeals subsequently addressed the issue

3

in a case related to whether a defendant's prior sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) affected a defendant's eligibility for FSA relief, stating:

> [defendant's] Count 39 conviction is a "covered offense" under § 404 of the First Step Act because (1) it is a violation of a federal statute; (2) the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act; and (3) it was committed before August 3, 2010. Consequently, [defendant] is eligible for a sentence reduction on Count 39: the district court may "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act … were in effect at the time of the covered offense was committed." First Step Act § 404(b).
>
> It is true, as the district court noted, that [defendant's] base offense level under the Sentencing Guidelines was based on more than 150 kilograms of powder cocaine, not cocaine base. But this Guidelines calculation does not change the fact that he was convicted on Count 39 for distributing cocaine base in violation of 21 U.S.C. § 841(b)(1)(A)(iii) (1996). The First Step Act applies to offenses, not conduct, *see* First Step Act § 404(a), and it is [defendant's] statute of conviction that determines his eligibility for relief. . .

*McDonald*, 944 F.3d at 772. The Government continued to argue that the quantity found at sentencing controlled and the contrary language in *McDonald* was merely "dicta." The Eighth Circuit recently rejected that argument. *United States v. Banks*, No. 19-1750, 2020 WL 2761055, at *1 (8th Cir. May 28, 2020). Thus, the Government now agrees that defendant is eligible for relief but continues to argue that I should exercise my discretion to deny any sentence reduction. Doc. No. 177.

Under the Fair Sentencing Act, Lee's statutory range on Count 1s is now five years to 40 years in prison, with a supervised release range of four years to life.[2] His total offense level would remain a 36, with a Criminal History Category of III, and his

---

[2] The U.S. Probation Office for the Northern District of Iowa has written a memo calculating defendant's amended statutory and guideline range, considering the Fair Sentencing Act and the applicable changes to the Guidelines. The memo prepared by U.S. Probation will be filed contemporaneously with this order.

4

USSG range remains 235 to 293 months, with four to five years of supervised release to follow. Because his statutory range changed, Lee is eligible for relief and I must consider whether I should exercise my discretion to grant him a reduced sentence. *See, e.g., United States v. Beamus,* 943 F.3d 789, 790 (6th Cir. 2019).

### IV. FSA ANALYSIS

Lee argues that I should reduce his sentence below the current guideline range and sentence him to 188 months – essentially time served.[3] The Government argues I should exercise my discretion to deny relief. The Government notes that I previously stated that my understanding of the court's authority was that the court was precluded from reducing a sentence below the bottom of the amended guideline range unless the court previously varied under the guidelines. *Ingram*, CR07-4056-LTS, Doc. No. 303 at n.3. However, Lee points out that numerous courts have now come to the opposite conclusion, finding that the district courts may vary below the guideline range when granting an FSA reduction. *United States v. Chambers*, 956 F.3d 667, 675 (4th Cir. 2020) ("[t]o the extent that the district court in this case believed it either could not vary or could not consider post-sentencing conduct under the § 3553(a) factors, it erred"); *see also United States v. Holloway*, 956 F.3d 660, 666 (2d Cir. 2020) (FSA does not require district courts to comply with USSG § 1B1.10.). The Government seemingly concedes this point. *See* Doc. No. at 9 (stating, "[w]hile such a reduction may not be prohibited by the First Step Act . . ."). However, the Government argues that varying below the amended guideline range would result in an unwarranted sentencing disparity. In response, Lee states:

---

[3] Neither the FSA nor the Federal Rules of Criminal Procedure require a hearing or the presence of the defendant. *See also United States v. Williams*, 943 F.3d 841, 844 (8th Cir. 2019) (stating that no hearing is required in FSA cases).

5

> The government, however, ignores the fact that over 28% of Section 404 reductions resulted in sentences below the applicable guidelines range. *United States v. Chambers*, 2020 WL 1949249, at *6, citing U.S. Sentencing Comm'n, First Step Act of 2018 Resentencing Provisions Retroactivity Data Report 8, tbl. 5 (Oct. 2019). This suggests that many courts considering Section 404 reductions have concluded that downward variances from existing guideline ranges are justified in First Step Act cases based upon the reconsideration of § 3553(a) factors, intervening changes in sentencing law, and other factors, including, but not limited to, post-offense rehabilitation. Disparity caused by the consideration of such factors could hardly be considered "unwarranted" as that term is used in § 3553(a)(6).

Doc. No. 176 at 8.

Relatedly, Lee argues that I should consider his post-sentence rehabilitation. *See Pepper v. United States*, 562 U.S. 476, 493 (2011) (holding that post-sentencing developments, whether favorable or unfavorable to the defendant, bear directly on the court's duty to impose a sentence that is sufficient, but not greater than necessary, to serve the purposes of sentencing). Lee states:

> The defendant is not insisting that the court must, as a matter of right, apply intervening changes in the law, but is only requesting that this court, as so many other courts have done, consider such intervening changes in the law when considering what sentence is now sufficient, but not greater than necessary, to fulfill the goals of sentencing under § 3553(a). Given the ameliorative purposes of the First Step Act, it defies logic to suggest that Congress did not intend courts to at least consider such intervening changes when deciding how much, if any, to reduce an eligible defendant's sentence under the First Step Act. *See United States v. Vanzant*, Crim. No. 08-00216-KD-C, 2019 WL 3468207 (S.D. Ala. July 31, 2019) ("[o]ne purpose of § 404 of the First Step Act was to remedy the 'overly harsh' and prejudicial penalties for crack cocaine offenses." (citation omitted)).

Doc. No. 174-1 at 24. Lee argues his sentence should be reduced to 188 months because:

> although defendant's criminal conduct involved over six kilograms of crack and an enhancement for possession of a dangerous weapon, neither his offense conduct, nor his criminal history, should preclude a Section 404 sentence reduction. . . The defendant's criminal history only yields five criminal history points, and he has no prior drug felonies which makes him

6

rather unique among Section 404 applicants in this district. . . The
defendant has already served over 15 years of his sentence. (Ex. A, p. 3).
The time already served and its likely impact on his possibility of recidivism
bear on the need to protect the community. *Thompson*, 2019 WL 4040403,
at *10. The defendant is now over 45 years of age, so he has reached an
age of maturity when the likelihood of recidivism declines sharply. *Id*. at
*2, n.3. . . [Additionally, a] significant disparity still exists between the
treatment of crack and powder cocaine defendants. The crack to powder
ratio is still 18:1. If all of the crack and powder cocaine attributed to the
defendant by the PSR is treated as cocaine powder, under the current
guidelines the defendant's base offense level for 15 kilograms of cocaine
would barely be 32. USSG § 2D1.1(c)(4) (at least 15 kilograms but less
than 50 kilograms of powder cocaine). Applying the same two-level
enhancement for possession of a dangerous weapon, his total offense level
would be 34 which, at CHC III, would yield a sentencing range of 188-235
months.

Doc. No. 174-1 at 26-27.

Based on the case law referenced above, I find that I am permitted to vary below the amended USSG range. As such, the issue is whether I *should* vary based on either drug quantity ratio arguments or Lee's post-sentence conduct. Lee argues that if I consider the crack cocaine to which he was held responsible as powder cocaine, thus dispensing with the USSG's 18:1 ratio, his guideline range would be 188 to 235 months. *See, e.g., United States v. Williams,* 788 F. Supp. 2d 847, 885-90 (N.D. Iowa 2011) (in which another judge of this court rejected the 18:1 crack to powder cocaine ratio established under the Fair Sentencing Act and the 2010 USSG amendments and applied a 1:1 ratio).[4] The Government objects to any further reduction, complaining that "[t]his same argument was made by defendant to the sentencing judge, and rejected at the time

---

[4] The sentencing judge in *Williams,* United States District Judge Mark W. Bennett, had similarly rejected the 100:1 ratio that was in place prior to the Fair Sentencing Act of 2010. *See United States v. Gully*, 619 F. Supp. 2d 633, 638 (N.D. Iowa 2009).

7

of the original sentencing, even though the disparity was far greater at that time than it is today. Defendant simply wants a new bite at the apple." Doc. No. 175 at 7.

This argument is weak. The "apple" is 15 years old and looks far different then it did when Lee was sentenced, as sentencing law and policy concerning the disparity between crack and powder cocaine have evolved markedly since 2005. Whether the guidelines treat each gram of crack cocaine as 100 grams of powdered cocaine (as in 2005) or 18 grams of powdered cocaine (as now), many federal courts have concluded that there is simply no evidence or logical argument supporting this disparate treatment. *See Williams,* 788 F. Supp. 2d at 885-90; *see also United States v. Jones*, No. 3:99-cr-264-6, 2019 WL 4933578, at *15 n.2 (D. Conn. Oct. 7, 2019); *United States v. Gardner*, 20 F. Supp. 3d 468, 473 (S.D.N.Y. 2014); *United States v. Cousin*, Crim. No. 11–0143, 2012 WL 6015817, at *6 (W.D. Pa. Dec. 1, 2012); *United States v. Whigham*, 754 F.Supp.2d 239, 246-47 (D. Mass. 2010); *United States v. Lewis*, 623 F. Supp. 2d 42. 46-47 (D.D.C. 2009).

In *Gardner*, the court pointed out that the 18:1 ratio established by the Fair Sentencing Act "was a political compromise between the Government's proposed 1:1 ratio and those in Congress who wished to maintain the 100:1 ratio." 20 F. Supp. 3d at 473.[5] In *Lewis*, the court cited *Gully* in listing at least five distinct policy objections to applying any disparity as between the treatment of crack and powder cocaine:

> (1) the current cocaine Guidelines "do not exemplify the Commission's exercise of its characteristic institutional role," . . . (2) the assumptions about the relative harmfulness of crack and powder cocaine have not been

---

[5] The *Gardner* court noted that as early as 1995, the Sentencing Commission recommended that Congress eliminate the disparity between crack and powder cocaine and establish a 1:1 ratio. 20 F. Supp. 3d at 471 (citing United States Sentencing Comm'n, *Special Report to Congress: Cocaine and Federal Sentencing Policy vi–xv* (Feb. 1995)). The Department of Justice advocated for the same outcome in 2009. *Id*. (citing Restoring Fairness to Federal Sentencing: Addressing the Crack–Powder Disparity: Hearing Before the Subcomm. on Crime and Drugs of the S. Comm. on the Judiciary, 111th Cong. 100 (2009) (statement of Lanny A. Breuer, Assistant Att'y Gen., Criminal Div., U.S. Dep't of Justice)).

8

> borne out by the evidence; (3) the crack/powder disparity perversely tends to punish lower-level dealers more harshly than major traffickers because imported powder cocaine is converted into crack at a lower level in the trafficking hierarchy; (4) the [18:1] ratio "still improperly uses the quantity ratio as a proxy for various kinds of harm and violence that may or may not come with trafficking of crack cocaine in a particular case"; and (5) the crack/powder disparity fosters disrespect for and mistrust in the criminal justice system because of its disproportionate impact on African American defendants.

623 F. Supp. 3d at 46 (citations omitted).

Having reviewed this issue thoroughly, I agree with those courts that have rejected the disparate treatment of crack and powder cocaine and therefore express my categorical disagreement with the crack cocaine (or cocaine base) guidelines. In applying this disagreement, I will utilize the same procedures I described in *United States v. Harry*, 313 F. Supp. 3d 969, 974 (N.D. Iowa 2018), in which I expressed a categorical policy disagreement with the USSG's 10:1 ratio between actual (or ice) methamphetamine and methamphetamine mixture. Thus, in any case involving quantities of crack cocaine, I will first make standard guideline findings using the crack cocaine guidelines. Then, by way of variance, I will calculate an alternative base offense level, applying a 1:1 ratio such that any quantity of crack cocaine will be treated as the same quantity of powder cocaine. I will then apply any applicable increases or decreases to that base offense level (e.g., aggravating or mitigating role and acceptance of responsibility) to arrive at an alternative total offense level. I will use this alternative total offense level, in combination with the defendant's criminal history category, to calculate the adjusted guidelines range.

Of course, and as I explained in *Harry*, this will not end the analysis. I will next consider the other factors set forth in 18 U.S.C. § 3553(a) to determine the appropriate sentence in each case. That sentence could fall within the adjusted guidelines range or could be above or below that range, depending on my assessment of the relevant factors and circumstances.

9

In this case, treating crack cocaine as cocaine powder, and adding the small amounts of marijuana for which Lee was held accountable at sentencing, reduces the total converted drug weight to 3,126.8901 kg.[6] This equates to an alternative base offense level of 32. *See* USSG § 2D1.1(c)(4). Adding the two-level increase for possession of a dangerous weapon, Doc. No. 125 at ¶ 30, the alternative total offense level is 34 and, with a criminal history category of III, the adjusted guidelines range becomes 188 to 235 months.

After reviewing the case history, the parties' briefs and arguments, Lee's exhibits including his BOP history (Doc. Nos. 174-2, 174-3), the uncontested portions of the PSIR, and the 18 U.S.C. § 3553(a) factors, I find that a sentence at the bottom of the adjusted guidelines range, 188 months, is sufficient but not greater than necessary to achieve the goals of sentencing. As such, I will grant Lee's amended motion for a sentence reduction and amend the judgment to reflect a sentence of 188 months, but not less than time served.

## V. SECOND CHANCE ACT MOTION

On February 11, 2020, defendant filed a pro se motion (Doc. No. 165), pursuant to the Second Chance Act, requesting a judicial recommendation to the maximum amount of time allowed in a residential reentry center. *See* 18 U.S.C. § 3624(c)(1). Because the reduction discussed above will likely result in Lee's immediate release, his second chance act motion (Doc. No. 165) is denied as moot.

---

[6] This includes 110.1 g (or 0.1101 kg) of marijuana and a combined 15,633.9 g (or 15.6339 kg) of cocaine. Doc. No. 125 at ¶ 24. That quantity of cocaine equates, under the guidelines, to 3,126.78 kg of converted drug weight. The sum of 0.1101 kg and 3,126.78 kg is 3,126.8901 kg of converted drug weight.

10

## VI. CONCLUSION

For the reasons set forth herein:

1. Defendant's amended motion for a sentence reduction (Doc. No. 174) is **granted** and defendant's sentence is reduced to 188 months, but not less than time served.
2. The reduction granted by this order will be **stayed** for ten days from the date of this order so both the BOP and the U.S. Probation Office will have time to prepare for defendant's release.
3. Defendant's pro se motion (Doc. No. 163) is **denied as moot**.
4. All other provisions of the original sentence and judgment (Doc. No. 119), including but not limited to the five-year term of supervised release, remain in effect except as modified herein.
5. Defendant's pro se motion pursuant to the Second Chance Act (Doc. No. 165) is **denied as moot**.

**IT IS SO ORDERED.**

**DATED** this 23rd day of June, 2020.

_____
Leonard T. Strand, Chief Judge